IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH N. TALLIE,

    **Plaintiff,**

    v.                                          CASE NO. 22-3291-JWL-JPO

CRAWFORD COUNTY JAIL, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Joseph N. Tallie is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

**I. Nature of the Matter before the Court**

Plaintiff is a state pretrial detainee confined at the Crawford County Jail ("CCJ") in Girard, Kansas. He proceeds *pro se* and his fee status is pending.[1] Plaintiff names the following defendants: the CCJ; CCJ guards Kaleb Johnston, Kayla Johnston, Herman Moran, Tony, and Charlotte; Captain Ryan Dill of the CCJ, who is responsible for training guards; Crawford County Sheriff Danny Smith; and the Crawford County Sheriff's Office.[2]

Plaintiff alleges in the Complaint (Doc. 1) that on June 28, 2022, he became distraught after CCJ staff failed to provide him means to view the contents of a CD of discovery materials

---

[1] Plaintiff is reminded that as stated in the notice of November 8, 2022 (Doc. 2), he is required to either pay the full filing fee or submit a motion to proceed without payment of fees on or before December 8, 2022, or this action may be dismissed without further prior notice.

[2] Because Plaintiff does not know the last names of some of the defendant guards, the Court refers to the defendant guards by their first names.

related to his ongoing state criminal case, in which he is representing himself. Plaintiff threw a trash can across the pod and began filing a grievance at the kiosk. Several guards entered the pod and told him to lay on the ground with his hands behind his back. Plaintiff asked to complete his grievance, but the guards drew their tazers and directed him to step away from the kiosk. Plaintiff asked to go to his cell, but Defendant Charlotte said, "'No! You're going in the pickle suit!" When Plaintiff continued to try to negotiate his next action, Defendant Charlotte told a guard to taze him. At that point, Plaintiff agreed to lay down and he was "aggressively hog-tied" and cuffed. Defendant Charlotte told a new guard, "'Here's your training day. Here's how we handle the loud ones.'" Plaintiff was taken to an observation room, where he was left hog-tied for several hours.

On October 21, 2022, CCJ staff stopped providing him the tablet by which he accesses the law library resources he needs to represent himself in court. Plaintiff was told "'Charlotte said we can't give it to you anymore.'" For the next few days, Plaintiff's requests for access to the tablet were denied. On October 24, 2022, Plaintiff received word that he could have access to the tablet, but CCJ guards refused to bring it to him. When Plaintiff submitted another request, he learned that his access to the tablet had been revoked for disciplinary reasons and his access would resume on October 28, 2022.

On October 27, 2022, Plaintiff's ink pen began to stop working and CCJ staff refused to provide him with a new pen. Over the following few days, Plaintiff again asked for the tablet, writing paper, and a new pen, but his requests were unsuccessful. On October 28, 2022, Plaintiff gave forms from this Court to CCJ staff to obtain copies, but staff never returned the forms or any copies. The next morning, CCJ Supervisor Brian Dyson brought Plaintiff his forms. Later that afternoon, after other CCJ staff repeatedly denied Plaintiff's requests for writing paper and a pen,

Plaintiff became angry and demanded to see Dyson again. Defendant Kayla told Plaintiff that Dyson was busy and Plaintiff began screaming, cursing, and kicking the pod door.

Defendant Kaleb came into the pod and directed Plaintiff to go to his cell, but Plaintiff refused, stating, "'Either take me to the hole or go get Brian.'" Defendant Herman entered the pod and also told Plaintiff to go to his cell but Plaintiff, who was now seated on the floor, refused to do so. Defendant Tony then came into the pod and the three guards grabbed Plaintiff to move him to his cell. Plaintiff asserts that Defendant Kaleb choked him and Defendant Tony tazed him, at which point Plaintiff blacked out and the guards dropped him on the floor, where his head hit the ground. The guards slammed him into the far side of his cell, someone hit him in the back of the head, and Defendant Kaleb continued to choke him. Eventually, Defendant Kaleb shoved Plaintiff's face and the guards left the cell.

Before the cell door shut, Plaintiff put his foot in the door and asked for pen and paper, at which point the guards ran back into the cell; Defendant Kaleb put his arm around Plaintiff's throat, Defendant Tony tazed Plaintiff's leg, and Defendant Herman twisted Plaintiff's foot. The guards tried to put Plaintiff's head into the toilet and at one point held him on the ground taunting him while Plaintiff said he could not breathe, said he was done, and asked them to stop. The encounter stopped only when Dyson came into the cell and ordered the guards to leave. Plaintiff further contends that a few days later, when he asked Defendant Kayla to copy some legal papers, she replied. "'I'm not doing shit for you. You wanna [sic] get mad we can have the same rundown as the other day.'"

As Count I of the complaint, Plaintiff alleges the violation of his Fourteenth Amendment "right to be free from assault and battery" by the alleged October 29, 2022 events involving Defendants Kaleb, Tony, and Herman; Defendant Kayla's comments a few days later; and

3

Defendants Dill and Smith's "failure to train [and] enforce protective policies." As Count II, Plaintiff alleges the violation of the Fourteenth Amendment's prohibition against excessive force by both the incident on June 28, 2022 and the incident on October 29, 2022, as well as by Defendants Smith and Dill's failure "to train and enforce policies to protect [inmates'] rights in CCJ."

As Count III, Plaintiff alleges the violation of his Sixth and Fourteenth Amendment rights "to learn the law and prepare for trial" based on his status as a pro se defendant in state court. He bases this count on general allegations of corruption in the state court and conspiracies between the State and court-appointed lawyers. Plaintiff also bases this claim on Defendants Kayla and Charlotte ordering that Plaintiff be denied access to the tablet; Defendants Kayla and Kaleb refusing to bring Plaintiff pen or paper and make him copies; Defendants Kaleb, Tony, and Herman throwing his papers everywhere in his cell; and Defendants Smith and Dill's failure to train and provide policies protecting constitutional rights. He seeks money damages, his discharge from custody, release on his own recognizance or transfer to another jail, and an order directing CCJ to implement a new policy protecting the rights of pretrial detainees and self-represented litigants.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The Court "will not supply additional factual allegations to round out a plaintiff's

complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

After reviewing Plaintiff's Complaint, the Court finds that the Complaint is subject to dismissal for the following reasons.

#### A. Improperly Joined Claims and Defendants

The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Pro se litigants must "follow the same rules of procedure that govern other litigants." *See Kay*, 500 F.3d at 1218; *McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including prisoners lacking access to counsel).

FRCP Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with

respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

*Id.* Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit held in *George* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." 507 F.3d at 607 (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations[3] and the three strikes provisions[4] of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees— for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). In sum, under Rule 18(a), the plaintiff

---

[3] 28 U.S.C. § 1915(b)(1) and (2) pertinently provide: "[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." To that end, the court "shall assess" an initial partial filing fee, when funds exist, and after payment of the initial fee, the prisoner "shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Id.* Non-prisoner and prisoner litigants alike should not be allowed to combine their unrelated claims against different defendants into a single lawsuit simply to avoid paying another filing fee in a separate lawsuit. Every litigant is required to responsibly weigh and individually bear, when possible, the costs of his or her decision to pursue litigation of disputes in federal court.

[4] 28 U.S.C. § 1915(g) provides: In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Complaint violates FRCP Rule 20(a)(2) because it names multiple defendants not shown to be connected to all claims raised in the Complaint by a common occurrence or question of fact or law. It violates FRCP Rule 18(a) because it contains claims not related to other claims against different defendants.  To permit Plaintiff to proceed in this single action on unrelated claims against different defendants that should be litigated in a separate action or actions would allow him to avoid paying the filing fees required for separate actions. It might also allow him to circumvent the three strikes provision set forth in 28 U.S.C. § 1915(g).

Plaintiff is required to file an amended complaint stating only those claims he has against a single defendant or, if he again names multiple defendants, stating only those claims arising from the same transaction or occurrence and having common questions of fact or law. Plaintiff must decide which properly joined defendants and claims to include in his amended complaint. Any claims or defendants that cannot be properly joined in his amended complaint are not lost but may be raised or named in separate complaints submitted for filing as new actions.

### B. Improper Defendants

Plaintiff names two improper defendants: the CCJ and the Crawford County Sheriff's Office. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West*, 487 U.S. at 48 (emphasis added).

Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 71 (1989); *see also Aston v. Cunningham*, No. 99–4156, 2000 WL 796086 at *4 n.3 (10th Cir. Jun. 21, 2000) ("a detention facility is not a person or legally created entity capable of being sued"). The CCJ is subject to dismissal from this action.

To impose § 1983 liability on a county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation. *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)). In *Monell*, the Supreme Court decided that "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue" and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989). Plaintiff generally alleges in the Complaint that the county is liable because of "bad policies or failure to adopt policies" and that Defendants Smith and Dill "fail[ed] to train and enforce protective policies, but these are merely conclusory statements that are insufficient to support a claim for relief. Plaintiff has identified no specific policy or deficiency in the training program used by the Sheriff or Crawford County and no causal link between any such inadequacy and the allegedly unconstitutional acts or inactions of CCJ guards. Thus, the Crawford County Sheriff's Office is subject to dismissal from this action.

C. **Personal Participation**

This action is subject to dismissal as against Defendants Dill, Smith, and Kayla because Plaintiff fails to allege facts showing their personal participation in the alleged constitutional

9

violations. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, Plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights.

The only allegations in the complaint involving Defendants Smith and Dill assert that they failed in their supervisory duties of training, creating, and enforcing policies. An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). The complaint currently before the Court does not contain sufficient allegations of personal involvement to state a claim against Defendants Smith and Dill.

Similarly, the only allegations regarding Defendant Kayla are that she failed to comply with Plaintiff's requests for writing supplies and for access to the tablet and she was rude to him. Even taking all of the factual allegations in the complaint as true, none of the actions attributed to Defendant Kayla demonstrate her personal participation in the violation of Plaintiff's

constitutional rights.[5] "[U]nder Tenth Circuit law, insults and slurs are generally insufficient to amount to a constitutional violation." *Calderon v. Lea County Correctional Facility*, 2017 WL 4271302, *3 (D. N.M. Sept. 22, 2017) (unpublished) (citing *Sims v. Hickock*, 185 F.3d 875 (10th Cir. 1999) (unpublished)); *see also Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff's verbal threats were insufficient to state a constitutional deprivation under 1983). Thus, the Complaint does not contain sufficient factual allegations to state a claim against Defendant Kayla.

### D. Failure to State a Claim on which Relief can be Granted

#### Count I

In Count I, Plaintiff claims the violation of his "Fourteenth Amendment Right to be free from Assault [and] Battery as a pretrial detainee." He bases this claim on actions by Defendants Kaleb, Tony, Herman, and Kayla related to the events on October 29, 2022. He further asserts that Defendant "Charlotte authorizes this behavior" and Defendants Smith and Dill "fail to train [and] enforce protective policies." For the reasons explained above, the facts in the complaint are insufficient to show Defendants Smith, Dill, Kayla, or Charlotte personally participated in a constitutional violation by assaulting or battering Plaintiff.

With respect to Defendants Kaleb, Tony, and Herman, not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). Plaintiff dedicates Count II to his claims of unconstitutionally excessive force by these Defendants, and he does not explain how the Fourteenth Amendment "right to be free from assault and battery" differs from the prohibition against excessive force.[6] Thus, it appears that the

---

[5] To the extent that Plaintiff asserts that Defendant Kayla "made orders depriving Plaintiff of [the] tablet," that is a conclusory statement insufficient to support a claim on which relief can be granted.
[6] If Plaintiff intends to assert in Count I a claim based on state tort law regarding assault and battery, the United States Supreme Court has explained that "[s]ection 1983 imposes liability for violations of rights protected by the

constitutional claim in Count I against Defendants Kaleb, Tony, and Herman is duplicative of the constitutional claim against them in Count II, which is discussed below. As a duplicative claim, Count I is subject to dismissal.

### Count II

In Count II, Plaintiff claims the violation of his "Fourteenth Amendment Right to be free from excessive force as a pretrial detainee." He bases this claim on the events of June 28, 2022 and October 29, 2022. Putting aside the joinder issues discussed above, Plaintiff fails to allege sufficient facts to support an excessive force claim based on the events of June 28, 2022. "Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment. *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). They are assessed under the Fourteenth Amendment. *Id*.

The Court held in *Kingsley* held that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

---

Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

The only named defendant involved in the events of June 28, 2022 is Defendant Charlotte, who Plaintiff alleges refused to engage in negotiations with him regarding his actions after he failed to lay down when ordered to do so and ordered an unnamed guard to taze Plaintiff. These factual allegations, even when taken as true, are insufficient to support a plausible claim of excessive force by Defendant Charlotte. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Not "every malevolent touch by a prison guard gives rise to a federal cause of action."); *Smith v. Iron County*, 692 F.2d 685 (10th Cir. 1982) (A prison guard's use of force against a prisoner is not always a constitutional violation.). Thus, Defendant Charlotte is subject to dismissal from this claim.

**Count III**

In Count III, Plaintiff alleges the violation of his right under the Sixth and Fourteenth Amendments "to learn the law [and] prepare for trial[ as a] pro se Defendant." "The Sixth Amendment provides criminal defendants with the right to represent themselves." *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017); *see also Faretta v. California*, 422 U.S. 806, 821 (1975) ("The Sixth Amendment, when naturally read, thus implies a right of self-representation."). The decision to exercise this right, however, comes with potential disadvantages. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel," including access to "the skill and experience of a lawyer." *See Faretta*, 422 U.S. at 835.

The Tenth Circuit has joined its sister circuits in holding that "a prisoner who voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding is not entitled to access to a law library or other legal materials." *United States v. Taylor*, 183 F.3d 1199, 1205 (1999). "[T]here is nothing constitutionally offensive about requiring a defendant to choose

13

between appointed counsel and proceeding *pro se* without access to legal materials because 'the [S]ixth [A]mendment is satisfied by the offer of professional representation alone.'" *Id.* (quoting *United States v. Robinson*, 913 F.2d 712, 716 (9th Cir. 1990)). Because Plaintiff's pro se status in his state criminal proceeding does not create a federal constitutional right to access the law library, the denial of access to the tablet is not a federal constitutional violation and cannot support a plausible claim for relief under § 1983.

Liberally construing the complaint, as is appropriate since Plaintiff proceeds in this matter pro se, he may be attempting to raise a claim of unconstitutional denial of access to the courts based on Defendants' refusal to provide writing paper and a pen. The United States Supreme Court has held that the constitutional right of access to the courts may be violated by "state prison officials . . . actively interfering with inmates' attempts to prepare legal documents." *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (discussing *Bounds v. Smith*, 430 U.S. 817 (1977)). But in order to state a claim of this sort, Plaintiff "must go one step further and demonstrate that the alleged shortcomings"--in this case, the denial of copying services and writing materials--"hindered his efforts to pursue a legal claim" that was nonfrivolous. *See Lewis*, 518 U.S. at 351-53.

In other words, Plaintiff must show that Defendants frustrated or impeded his ability to file or litigate a non-frivolous action. *See id.* at 351, 354–55. He may allege actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated, or impeded. *See id.* at 350, 353. The Complaint contains no such allegations, so even construing Count III to contain a claim that Defendants denied him access to the courts, Count III fails to satisfy the standing requirement of "actual injury" by showing that the alleged interference with court access hindered his efforts

to pursue a non-frivolous legal claim. *See id.* at 351-352; *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996).

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why this matter should not be dismissed for the reasons stated herein. In the alternative, Plaintiff may file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the Court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (22-3291-JWL-JPO) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff is given time to file a complete and proper amended complaint in which he concisely (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed

herein, this matter will be decided based upon the current deficient complaint and may be dismissed without further prior notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **December 28, 2022,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED THAT** Plaintiff is granted until **December 28, 2022,** in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated November 28, 2022, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**